1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MASSACHUSETTS
2

3        UNITED STATES OF AMERICA,              )
                                                )
4                        Plaintiff              )
                                                )
5              -VS-                             )   Criminal No. 14-10230-NMG
                                                )   Pages 1 - 25
6        LAWRENCE J. COSTELLO,                  )
                                                )
7                        Defendant              )

8                                  **SENTENCING**

9

10            BEFORE THE HONORABLE NATHANIEL M. GORTON
                     UNITED STATES DISTRICT JUDGE
11

12

   A P P E A R A N C E S:
13

           KENNETH G. SHINE, ESQ., Assistant United States Attorney,
14   Office of the United States Attorney, 1 Courthouse Way,
     Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.
15

           BERNARD GROSSBERG, ESQ., Law Office of Bernard Grossberg,
16   38 Green Street, Milton, Massachusetts, 02185, for the
     Defendant.
17

     ALSO PRESENT:  Jennifer Broquist, U.S. Probation Officer.
18

                                     United States District Court
19                                   1 Courthouse Way, Courtroom 4
                                     Boston, Massachusetts  02210
20                                   March 29, 2017, 2:33 p.m.

21

22

                              LEE A. MARZILLI
23                         OFFICIAL COURT REPORTER
                        United States District Court
24                      1 Courthouse Way, Room 7200
                             Boston, MA  02210
25                             (617)345-6787

<pre>
 1                    P R O C E E D I N G S

 2           THE CLERK:  This is Criminal Action No. 14-10230, the

 3   United States of America v. Lawrence Costello.  Will counsel

 4   please identify themselves for the record.

 5           MR. SHINE:  Your Honor, good afternoon.  Kenneth Shine

 6   on behalf of the United States.

 7           THE COURT:  Good afternoon, Mr. Shine.

 8           MR. GROSSBERG:  Good afternoon, your Honor.  Bernard

 9   Grossberg for Mr. Costello, who is seated here today.

10           THE DEFENDANT:  Good afternoon, your Honor.

11           THE COURT:  Good afternoon, Mr. Costello.

12           THE DEFENDANT:  Sorry I couldn't stand.

13           THE COURT:  And Ms. Broquist is here from Probation.

14   Good afternoon to her.

15           We are here on the sentencing of Mr. Lawrence J.

16   Costello, and I have received and read the Presentence Report,

17   and there are no other writings that I am aware of that were

18   submitted.

19           MR. SHINE:  There were not.

20           THE COURT:  From the defendant?

21           MR. GROSSBERG:  No, your Honor.

22           MR. SHINE:  And I would state, in error, I did not

23   submit something which I should have, and I'll explain that

24   when the appropriate time comes.

25           THE COURT:  All right.  Before we start, however,
</pre>

1    Counsel -- and you have been forewarned about this, but I want

2    to put it on the record -- after careful consideration of the

3    Presentence Report and review of the defendant's criminal

4    history, the Court has decided to reject the plea negotiated

5    between the parties pursuant to Federal Rule of Criminal

6    Procedure 11(c)(1)(C), and hereby informs the defendant that he

7    is entitled to withdraw his guilty plea and to proceed to

8    trial, which we will schedule if he chooses to exercise that

9    right.

10           My reason is as follows:  By my calculation, the

11   defendant is clearly a career offender, both as that term is

12   defined in the Sentencing Guidelines and as one would commonly

13   understand the meaning of such a term.  The defendant had

14   sixteen prior convictions, some for very serious crimes,

15   including masked armed robbery and assault with intent to

16   murder, that were unscored under the Guidelines before he was

17   convicted in 1998 of the two violent crimes which are clearly

18   predicates for the Guidelines definitions of career offender.

19   He also had twenty-two other charges and/or arrests against him

20   that did not end up resulting in criminal history points.

21           Nevertheless, because the parties apparently

22   negotiated the so-called (C) plea in good faith, believing that

23   the defendant was not going to be classified as a career

24   offender under the Guidelines, I am prepared to impose a

25   sentence that would fall within the Guideline range determined

1    by the offense level agreed to by the parties in their plea

2    agreement but applying a criminal history category of VI, which

3    is required once an offender has been found to be a career

4    offender; that is, Total Offense Level 22, Criminal History

5    Category VI, 84 to 105 months.

6           I will declare a short recess to give the parties an

7    opportunity to consider their options, and when we reconvene, I

8    will either proceed with this hearing or schedule a trial date,

9    with the necessary pretrial deadlines to be determined.  We

10   will be in recess for ten minutes.

11          MR. SHINE:  Thank you, your Honor.

12          THE CLERK:  All rise.

13          (A recess was taken, 2:37 p.m.)

14          (Resumed, 2:46 p.m.)

15          MR. GROSSBERG:  Your Honor, Mr. Costello would like to

16   proceed pursuant to what you just outlined.

17          THE COURT:  All right, thank you, Mr. Grossberg.

18   Please be seated.

19          Then I understand that the defendant has waived his

20   right to withdraw his plea of guilty and that we are prepared

21   to go forward with the sentence?

22          MR. GROSSBERG:  That's correct, your Honor.

23          THE COURT:  All right, then we need to proceed to the

24   Presentence Report.  There were objections interposed to that

25   report.  Objections No. 1 and 2 were the only substantive

1  objections, I believe, Mr. Grossberg, since the remainder were

2  either informational or derivative on that objection.  And, of

3  course, that objection has to do with what we were talking

4  about before, whether or not the defendant is to be deemed a

5  career offender under Section 4B1.1.  Do you wish to address

6  further that objection?

7        MR. GROSSBERG:  No, your Honor.  I've been educated

8  through Probation.  There's been some discrepancy as to when

9  the 15-year period runs, if it runs from either the date of the

10  offense, the date of the imposition of sentence; and as the

11  Probation Department has found, it runs from the date of the

12  expiration of the sentence, so I am content to accept

13  Probation's finding, your Honor.

14        THE COURT:  Thank you, Mr. Grossberg.  I know it is a

15  confusing matter, not only for counsel but for the judges as

16  well.  But I believe Probation has correctly read the

17  appropriate Guideline, and that indeed the two convictions that

18  we have been dealing with back in 1998 both do qualify as

19  predicates for the career offender, and therefore I'm going to

20  overrule the defendant's Objections 1 and 2 in that regard.

21        Again, I believe the remaining objections were

22  informational.  Is that correct, Mr. Grossberg?

23        MR. GROSSBERG:  I have nothing further to add, your

24  Honor.  There have been revisions made to the PSR in that

25  regard.

1          THE COURT:  Okay.  And there were no objections from

2     the government.  Is that right, Mr. Shine?

3          MR. SHINE:  This is possibly the best time for me

4     to -- there were no written objections by the government, your

5     Honor, that's correct, and that is an error.  I had conveyed a

6     concern to Probation on a few occasions.  I felt that I had

7     properly filed an objection and I did not, so I take full

8     responsibility for that.  But with the Court's understanding, I

9     will not -- I'm acceptable what the Court's view of the

10    Guidelines are at this point.  I'm wrong, I'm a hundred percent

11    wrong in my view of what I thought I had done.  I hadn't done

12    it properly and I made a mistake, and I accept the Court's

13    position and Probation's position and the Court's position.

14         THE COURT:  Well, you can state for the record if

15    you'd like to, Mr. Shine, your objection.  You know, just

16    because it wasn't made in writing doesn't mean it absolutely

17    can't be considered, but if you wish to speak for the record,

18    feel free.

19         MR. SHINE:  If I could, I just think I have to -- in a

20    complete transparency and to benefit Mr. Costello, I would

21    never do anything.  In this particular case, the government did

22    not believe Paragraph 53, the offense, fell within the range as

23    a career offender predicate, and therefore in our negotiating,

24    we had not considered that, and it's based upon a couple of

25    things.  So the Court can understand, anytime this Assistant

1    U.S. Attorney has a case where there is a possibility of an

2    enhanced penalty, either based upon the designation as a career

3    offender or the designation as an armed career criminal, which

4    are the cases that I primarily handle, I personally, prior to

5    the entry of any plea, even during the charging stages, I go to

6    the courts and I personally pull every docket I can find to

7    verify the information in the docket is accurate.  In this case

8    I can honestly -- I will tell you as an officer of the court, I

9    went to the Norfolk Superior Court.  I was shown a box with

10   loose paper, and I went through that for a morning, and I can

11   tell the Court that I could not locate the complete docket on

12   this entry.

13          In Norfolk Superior Court in 1998, there were

14   handwritten notes that were given to the actual file, and that

15   became the docket.  There was no typing or even other way to

16   transmit it.  The docket shows the date of entry and it shows

17   different events as they proceed, and it's missing from April

18   of '98 forward.  There's nothing.  It's gone.  The pages are

19   just -- so there might be five pages in line, and Pages 6, 7,

20   8, 9, and 10, they don't exist.  Probation doesn't have them; I

21   couldn't find them.  So I couldn't honestly state -- although I

22   would rely upon the BOP record as to what happened, I can't

23   tell you that that's an absolute.  Mistakes are made all the

24   time.  That's why I double-check it myself, and it didn't

25   exist.  So I took the position, if I couldn't find it, I can't

1    count it, and that's why the government -- I'm just explaining

2    why the government took the position that it did on this

3    particular case.  And since I couldn't find it and since I

4    couldn't verify any other document -- I could the other

5    documents, and in other cases I find them all the time.  I

6    couldn't in this case, so that's why the government took that

7    position.  We wanted to -- if we were going to make a mistake,

8    I'd rather make the mistake benefiting the defendant than

9    otherwise.

10           And, trust me, I started this case from day one, and

11   he knows, Mr. Costello knows, I tried as hard as I could to get

12   this case -- I felt he was a career offender, but then when I

13   got to the end when it was ready to go, I couldn't prove it, so

14   I took a knee, as one would say.

15           THE COURT:  Do you wish to comment in response?

16           MR. GROSSBERG:  Well, I was going to comment later on,

17   Judge, but what happened as to the offense outlined in

18   Paragraph 53 is, Mr. Costello was an inmate at -- I believe at

19   that time it was MCI Walpole -- it's now MCI Cedar Junction --

20   and he was attacked by three fellow inmates in a back stairway

21   on the cellblock on which he was assigned.  He ran up to the

22   third tier.  It was somewhat of a racial type of attack.

23   Another inmate came out to assist Mr. Costello.  There was

24   blood on the tier.  The person who was the victim here slipped

25   off the third tier in the blood and went down three levels.

1    The codefendant was charged with Mr. Costello.  The codefendant

2    went to trial, was found not guilty.

3         Mr. Costello had just been sentenced for the offense

4    outlined in Paragraph 54, which totals 15 years.  He was still

5    held at the Plymouth jail.  He arranged to be brought into the

6    Norfolk County Superior Court, and they offered him right then

7    and there a five-year concurrent sentence.  And being somewhat

8    pragmatic at that time, not realizing how it would come back to

9    haunt him later on, he accepted the five-year concurrent

10   sentence, gave up his right to trial because it did not affect

11   his sentence in terms of the federal sentence, and he didn't

12   want to enter the Bureau of Prisons system having a case

13   unresolved because that precludes him from any lower-custody

14   status and halfway house, things of that nature.  So while he

15   intended to go to trial, just as the codefendant did, he gave

16   up that right, accepting the five years because it was

17   concurrent.

18        So while the conviction counts technically, both

19   Mr. Shine and I had reservations about the nature of that

20   conviction, your Honor, and I'd ask you to take it into

21   consideration when you consider the range, Judge.

22        THE COURT:  Thank you, Mr. Grossberg.

23        Did the probation officer have any comment in this

24   regard?

25        MS. BROQUIST:  No, your Honor.  We don't have any

1    additional information beyond what's in the Presentence Report.

2    As you'll see in Paragraph 53 on the second paragraph, we did

3    note that we don't have a complete docket and that we did

4    receive the disposition from the defendant's CORI record, so

5    that's where that information came from.  I have tried to get

6    an updated docket from Norfolk Superior Court but have been

7    unsuccessful.

8              THE COURT:  All right, thank you, Ms. Broquist.

9              The Court will nevertheless deny the objections to the

10   establishment of this defendant as a career offender but will

11   take it into account when considering his sentence.

12             Having disposed of the objections to the Presentence

13   Report, we need to make findings with respect to the Guidelines

14   range, and those recommendations appear starting on Page 7 of

15   the Presentence Report.  I understand that subsequent to the

16   October date of this report, of course, the 2016 Guideline

17   manual came out, so we're dealing with the most recent

18   Guideline, the 2016 Guideline, and within that Guideline,

19   Section 2B3.1 -- that is, the one that relates to robbery --

20   applies and calls for a base offense level of 20.  Because this

21   particular robbery was of a financial institution, under

22   Subparagraph (b)(1) of that same Guideline, a two-level

23   increase is warranted.  And, further, because a dangerous

24   weapon was brandished -- and in this case there is no specific

25   evidence that it was a firearm, so dangerous weapon section is

1    called for, and that's Subsection (b)(2)(E) -- it calls for an

2    additional three-level increase in the offense level, yielding

3    an adjusted offense level of 25.  And then, based upon the

4    Court's previous ruling, rather than automatically upping the

5    offense level under the career offender Guidelines

6    Section 4B1.1, this Court will deem this or compute this

7    without that enhancement and give the defendant credit for a

8    two-level downward adjustment, therefore yielding a total

9    offense level of 22.

10             Do counsel agree with the calculations made by the

11   Court?

12             MR. SHINE:  The government agrees, your Honor.

13             THE COURT:  And, Mr. Grossberg?

14             MR. GROSSBERG:  I do agree with it, your Honor.

15             MS. BROQUIST:  Excuse me, your Honor.  Just for

16   verification, is your Honor doing that as a departure or as a

17   finding for the Guidelines?

18             THE COURT:  Well, I take it the government is moving

19   for a departure.  Is that correct?

20             MR. SHINE:  That's correct, sir.

21             THE COURT:  Then the Court will accept that joint

22   motion for a departure.

23             MS. BROQUIST:  Thank you.  So you're accepting the

24   Presentence Report but then departing from that?

25             THE COURT:  Yes.

1          MS. BROQUIST:  Thank you, your Honor.

2          THE COURT:  So technically Ms. Broquist I think is

3    asking me to technically find that under Chapter 4 enhancement,

4    that the offense level should be 34 and the total offense level

5    of 31, but I'm going to treat it when I sentence this defendant

6    as though that enhancement does not apply.

7          Is that understood, Mr. Grossberg?

8          MR. GROSSBERG:  Yes, your Honor.

9          THE COURT:  Okay.  So turning then to the defendant's

10   criminal history, as I have said before, there were, as I count

11   them, sixteen prior convictions that were not scored for

12   reasons of age in most cases, but then the conviction in the

13   Paragraph 53, which was in 1998 for armed assault with intent

14   to murder, yields three criminal history points.  And then the

15   conviction described in Paragraph 54, also in 1998, for

16   conspiracy to commit armed bank robbery and armed bank robbery,

17   three additional criminal history points are warranted; and

18   that means the defendant ends up with six criminal history

19   points.  And because he committed the instant offense while

20   under the criminal justice sentence for that previously

21   described offense described in Paragraph 54, two additional

22   points are added pursuant to Guideline Section 4A1.1(d).

23   Therefore, the defendant ends up with eight criminal history

24   points and falls in Criminal History Category IV.  Again,

25   because of the career offender Guidelines, his criminal history

1  is automatically increased to VI pursuant to Guideline

2  Section 4B1.1(b).

3          Do counsel agree with those calculations?

4          MR. SHINE:  The government agrees with the calculations.

5          THE COURT:  Mr. Grossberg?

6          MR. GROSSBERG:  I do, your Honor, yes.

7          THE COURT:  Then that means that technically the

8  Guideline range at 31-VI would be 188 to 235 months, but as the

9  Court has previously described, taking the offense level

10  without consideration of the career offender Guidelines, the

11  range that I am going to use is 84 to 105 months.

12          I will hear recommendations for sentencing, first,

13  from the government, Mr. Shine.

14          MR. SHINE:  Your Honor, thank you.  I pretty much laid

15  out my view of the case and, hopefully, in an abundance of

16  transparency, how I felt the case had broken down.

17  Mr. Costello has an extensive criminal history record, I'm

18  aware of that, and that was part of the play in our office

19  taking this case for consideration.  This was a violent act

20  this particular date with the use of a dangerous weapon.  So at

21  this point the government in one respect is going to accept the

22  Court's view.  It's a lot higher than the government initially

23  spoke about, but it's still fair and reasonable.  I'm going to

24  recommend the low end of 84 months to be followed by five years

25  of supervised release, a mandatory special assessment of $100,

1    and the restitution to the bank -- I'm sorry, I don't have it

2    in front of me.

3              THE COURT:  I have it somewhere here.

4              MS. BROQUIST:  It's $17,687.40.

5              THE COURT:  Okay.

6              MR. SHINE:  And I make the recommendation based on the

7    factors which I presented to you based upon Mr. Costello's

8    history, but I'm also -- so we entered a plea approximately a

9    year ago.  During that period of time, Mr. Costello has written

10   me a number of letters just taking responsibility for what he's

11   done and actually being very forthright.  And in my 35-year

12   career, I have not had defendants who have actually contacted

13   me, and I don't think he did it as an attempt to sway my view

14   because he knew what my view was because I met him on day one

15   and I went after him on day one within the bounds of the law;

16   but he kept on pressing upon me that he'd made mistakes in

17   life, and this was another one of his mistakes, and he wanted

18   to end it.

19              Since then, I've become aware of some pretty

20   critical -- his mental health conditions and his physical

21   health condition in terms of suffering a bout with cancer,

22   which he now tells me is in remission, and back surgery which

23   has left him in a wheelchair.  He has indicated to me that that

24   surgery has not been successful, and he's probably bound for a

25   wheelchair for an extended period of time.  So his physical

1    prognosis is not the best right now.  I think 84 months is an

2    extended period of time for him to be incarcerated.  Hopefully

3    this will be the last time he will be in our court or see us

4    again.  He does have, and I will point to the Court, an open

5    supervised release violation with Justice O'Toole, and the

6    government will be addressing that matter at that time in

7    recommendations.  So I think the number of 84 is fair and

8    accurate, and I think it's just in this particular case.

9           Thank you.

10          THE COURT:  Thank you, Mr. Shine.

11          Mr. Grossberg?

12          MR. GROSSBERG:  Yes, your Honor.  Mr. Costello has

13   asked me to make certain that I thank you for the fact that

14   this case has been delayed approximately a year so he could get

15   the necessary medical attention during the past year.  And I

16   know we've asked and perhaps we tried the Court's patience in

17   asking for repeated continuances of the sentencing hearing, but

18   what had happened, your Honor, he needed different types of

19   surgery, and that was the basis for the requests.

20          When I looked at the PSR, when I reviewed it again

21   recently, I have to say, in all frankness, your Honor, I am

22   hard-pressed to advocate on his behalf in terms of the

23   Section 3553 factors except for his physical being, his

24   physical and mental health.  Several years ago he was diagnosed

25   with ulcerative colitis.  Recently that situation developed

1    into full-blown severe Crohn's disease.  It was diagnosed

2    further that he has a hole in his colon, which has resulted in

3    his being incontinent in terms of his bowels.  Whenever he ate,

4    the food would run through him.  He had to constantly go to the

5    bathroom, which was also accompanied by a severe weight loss

6    because he could not hold any food down.

7        You might recall, your Honor, I addressed you several

8    months ago that what was going on at that time, he was being

9    transported every six weeks from the Plymouth jail to the

10   Shattuck Hospital for infusion type of therapy, which is

11   similar to chemotherapy, to treat the Crohn's disease.  And

12   that would leave him completely debilitated for three to five

13   days, which was very hard for him to deal with because not only

14   physically but in a jail setting.  He tells me, Judge, that he

15   is going to have to continue with the infusion treatments every

16   six weeks for the rest of his life to deal with the Crohn's

17   disease.  He is also waiting for a surgery to be scheduled to

18   repair the hole in his colon.

19       Exacerbating his situation is, he suffers from

20   hepatitis C.  He's had skin lesions removed from his face and

21   his upper lip.  He has been diagnosed with having polyps, which

22   are a sign of cancer, in his throat.  Right now they're benign.

23   They're keeping a watch over that situation.  He suffers from

24   asthma, and further complicating the matter, he suffers from

25   chronic obstructive pulmonary disease, COPD, for which he takes

1    medication.

2          Further, he has bronchitis, and he's allowed to carry

3    three types of inhalers with him at all times.  As a result of

4    the COPD, he developed lung cancer, and he was operated on this

5    past December, I believe the 16th, at the Boston Medical Center

6    where a tumor was removed from his left lung.  He's been told

7    now that the cancer is in remission, but he's had two bouts

8    with different types of cancer.

9          Most critically, your Honor, this past December, after

10   waiting two years, he finally received surgery for not

11   herniated disks in his back but two crushed disks.  The surgery

12   was performed on December 9 at the Boston Medical Center.  It

13   was a very severe operation.  I've seen the consent form that

14   Mr. Costello had to sign which indicated to him or informed him

15   of the side effects, including possible death during the course

16   of the operation, it was so severe.  Mr. Costello has shown me

17   a -- this is an X ray of his spine.  Three rods were inserted

18   in his spine and I think six separate pins.  The surgery was an

19   eight-and-a-half-hour procedure.  He's now wearing some type of

20   cast around his lower portion of his body.

21         He's been at the Shattuck Hospital for the last five

22   months.  He receives physical and rehab therapy.  Recently,

23   your Honor, he was told, given the position that he's still in,

24   not able to walk, that the surgery was not successful, that

25   they're going to wait perhaps six or seven months to see if he

1  can regain his ability to walk.  If that doesn't happen,

2  Mr. Costello's choices would be to repeat the surgery or to

3  live in a wheelchair.

4         Most critically to him, as part of his surgery, he has

5  suffered nerve damage.  On his left foot, three toes are numb.

6  He has no sensation in that part of his foot.  On his upper

7  back from his buttocks, he has no feeling; and particularly

8  important, he has no feeling in the ankle joint, and that

9  prevents him from walking.  When he's in the hospital, the only

10  way he can walk is with a walker and a wheelchair right behind

11  him in case he has to sit down.  He's really not ambulatory.

12  It's envisioned right now that he would spend another seven

13  months in rehab at the Shattuck Hospital, and, if he improves,

14  he would go on, but if he doesn't improve, he'd have to make a

15  decision as to whether or not to have further surgery.

16         This man, your Honor, who's now at 56 years old, has

17  served 22.5 years of his life incarcerated.  It is for certain,

18  Judge, that the life that he knew previously, the life that he

19  led previously is not a life that he can go back to.  His ways

20  of the past are gone completely.  He hopes, as he told me, your

21  Honor, that he would be able to walk again if he improves, with

22  or without the additional surgery.

23         Although the conviction in Paragraph 53 in the Norfolk

24  Superior Court counts as a predicate for career offender, I

25  trust your Honor gets some idea of what type of offense it was

1  in a prison setting and why Mr. Costello resolved it by means

2  of a guilty plea, because he was already sentenced to fifteen

3  years, and most defendants in that situation would jump at a

4  concurrent sentence which would not affect him rather than take

5  his chances at trial.

6          One other thing to note, your Honor, is that as

7  mentioned in the presentence investigation report, shortly

8  after Mr. Costello was arrested in this matter, he was

9  contacted by his son, who he's had no contact with for 30 or so

10  years.  He and his son have reconciled.  He speaks to his son

11  now, Judge, every day by telephone.  His son visits him.  His

12  son lives in Long Island in New York.  He's in the business of

13  commercial real estate and has offered Mr. Costello a job and a

14  place to live when he's released.  As a result of reconciling

15  with his son, he has reconciled with his two daughters, and he

16  speaks to them not quite as often as he does with his son, but

17  he does have contact with his daughters, from whom he has been

18  estranged as well.

19          So the point I'm trying to impress upon the Court is

20  that Mr. Costello is not going to be able to live the life he

21  lived in the past, your Honor.  I would ask you most sincerely

22  to impose the low end of the Guidelines.  A sentence of 84

23  months, which is seven years, is sufficient for the purposes of

24  punishment and the other purposes of sentencing at this time,

25  especially because of, a result of his physical condition, your

1 | Honor.

2 |     THE COURT:  Thank you, Mr. Grossberg.  Does the

3 | defendant wish to address the Court before sentencing is

4 | imposed?

5 |     THE DEFENDANT:  Your Honor, I'd like to say thank you

6 | for the time to let me get the operation and everything and the

7 | continuances you gave, and I assure you I will not be back in

8 | front of this Court again.  The system's changed.  I've never

9 | said I'm done before in my life.  I'm done with that life, and

10 | I apologize to the Court for being here today.  And thank you

11 | to Mr. Shine and Mr. Grossberg and you as well, your Honor.

12 |     THE COURT:  All right, thank you, Mr. Costello.

13 |     Do counsel have any reason why sentence ought not to

14 | be imposed at this time?

15 |     MR. SHINE:  I do not, sir.

16 |     MR. GROSSBERG:  No, your Honor.

17 |     THE COURT:  Then I'm not going to ask the defendant to

18 | stand as I normally do because I understand your condition.

19 |     THE DEFENDANT:  I wish I could.

20 |     THE COURT:  But, Mr. Costello, you stand convicted of

21 | a very serious crime, armed bank robbery during which a

22 | dangerous weapon was brandished.  But as bad as the crime

23 | itself was, the circumstances under which it was committed, you

24 | and your cohorts robbed this bank in Attleboro less than one

25 | year after you were released from a long term of imprisonment

1    you served for having committed an equally horrendous armed

2    bank robbery in Newburyport in 1998.  During that

3    incarceration, you intimidated a potential witness against you

4    in another bank robbery in which you were suspected of

5    participating but weren't charged, and you received twenty-nine

6    disciplinary reports for your criminal conduct while in prison.

7         I can reach no other conclusion than that your

8    rehabilitation is uncertain and that you deserve a lengthy

9    prison sentence to see if that is at all possible.  Hopefully,

10   based upon the statement that you just made to the Court, it is

11   possible.  Everybody has some redeeming value, and I am hoping

12   that you are showing that today.  But specific deterrence is

13   necessary, not only for your sake but also so the public can be

14   protected from your continuous criminal conduct.

15        Pursuant to the Sentencing Reform Act of 1984 and

16   having considered the sentencing factors enumerated in Title 18

17   of the United States Code, Section 3553(a), it is the judgment

18   of this Court that you, Lawrence Costello, are hereby committed

19   to the custody of the Bureau of Prisons to be imprisoned for a

20   term of 84 months.  The Court makes a judicial recommendation

21   that you be designated to an institution commensurate with

22   security where the Bureau of Prisons can afford appropriate

23   medical care for your documented medical needs.

24        Upon release from imprisonment, you shall be placed on

25   supervised release for a term of five years.  Within 72 hours

1    of release from custody of the Bureau of Prisons, you shall

2    report in person to the district to which you are released.

3         It is further ordered that you shall make restitution

4    to the Bank of America at 505 Pleasant Street in Attleboro,

5    Massachusetts, 02703, in the amount of $17,687.40.  Payment of

6    the restitution shall begin immediately and shall be made

7    according to the requirements of the Federal Bureau of Prisons

8    Inmate Financial Responsibility Program while you are

9    incarcerated and in accordance with a court-ordered repayment

10   schedule during any term of supervised release.  All

11   restitution payments shall be made to the Clerk of the United

12   States District Court for transfer to the identified victim.

13        You are to notify the United States Attorney for this

14   district within 30 days of any change of mailing or residence

15   address that occurs while any portion of that restitution

16   remains unpaid.  No fine is imposed, as it is deemed you do not

17   have the financial ability to pay a fine in addition to

18   restitution.

19        While under the Probation Office's supervision, you

20   shall comply with the following terms and conditions:  First,

21   you shall not commit another federal, state, or local crime.

22   You shall not illegally possess a controlled substance.  You

23   shall refrain from any unlawful use of a controlled substance

24   and submit to one drug test within 15 days of release from

25   imprisonment, and at least two periodic drug tests thereafter,

1  not to exceed fifty tests per year, as directed by the

2  Probation Office.

3         You are to submit to the collection of a DNA sample,

4  as directed by Probation Office, and you are to comply with the

5  standard conditions that have been adopted by this Court and

6  are described in the Sentencing Guidelines at Section 5D1.3(c)

7  and which will be set forth in detail in the Judgment and

8  Committal.

9         The following further special conditions apply during

10  your supervised release:  You are prohibited from possessing a

11  firearm, destructive device, or other dangerous weapon.  You

12  are to pay the balance of any restitution imposed according to

13  a court-ordered repayment schedule.  You are prohibited from

14  incurring new credit charges or opening additional lines of

15  credit without the approval of the Probation Office while any

16  financial obligation remains outstanding.  You are to provide

17  the Probation Office access to any requested financial

18  information, which may be shared with the Financial Litigation

19  Unit of the United States Attorney's Office.

20         And you are to participate in any program for

21  substance abuse counseling, as directed by the Probation

22  Office, which program may include testing, not to exceed fifty

23  drug tests per year, to determine whether you have reverted to

24  the use of alcohol or drugs.  You shall be required to

25  contribute to the costs of services for that treatment based

1   upon your ability to pay or the availability of third-party

2   payment.  And you are to participate in a mental health

3   treatment program as directed by the Probation Office.  You are

4   required to contribute to the costs of services for that

5   treatment based upon your ability to pay or the availability of

6   third-party payment.

7        It is further ordered that you shall pay to the United

8   States a special assessment of $100, which shall be due and

9   payable immediately.

10        Mr. Costello, you have a right to appeal this

11   sentence.  If you choose to appeal, you must do so within

12   14 days.  If you cannot afford an attorney, an attorney will be

13   appointed on your behalf.  Do you understand that?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Is there any further business then to come

16   before the Court in these proceedings?

17        MR. SHINE:  There is not from the government.  Thank

18   you.

19        MR. GROSSBERG:  Your Honor, I ask you to consider one

20   point, if you would consider ordering that the restitution not

21   begin immediately.  My understanding is that prison inmates who

22   are in Mr. Costello's position, if it's immediate, the Bureau

23   of Prisons withdraws amounts from his canteen institutional

24   account.  He gets a very small amount of money from his family

25   just for basic necessities.  If your Honor would consider

1   imposing the restitution order to begin upon his release.  He

2   doesn't have any income while he's incarcerated, and it has

3   caused problems, I know, for a number of inmates in similar

4   situations.

5           THE COURT:  Ms. Broquist, is the information --

6           MS. BROQUIST:  Your Honor, we simply ask that it be

7   done immediately, and, as I understand it, it's a percentage of

8   whatever he has in the canteen.

9           THE COURT:  That's my understanding, is that it's a

10  percentage of the canteen amount.

11          Mr. Shine?

12          MR. SHINE:  No, I agree, it's a percentage of the

13  canteen amount.  They don't take his entire canteen.

14          THE COURT:  I'm not going to change the order.  I will

15  leave that up to the Bureau of Prisons.  We're adjourned.

16          MR. GROSSBERG:  Thank you, your Honor.

17          MR. SHINE:  Thank you, sir.

18          THE CLERK:  All rise.  The defendant is remanded.

19          (Adjourned, 3:20 p.m.)

20

21

22

23

24

25

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )

        I, Lee A. Marzilli, Official Federal Court Reporter,

do hereby certify that the foregoing transcript, Pages 1

through 25 inclusive, was recorded by me stenographically at

the time and place aforesaid in Criminal No. 14-10230-NMG,

United States of America v. Lawrence J. Costello, and

thereafter by me reduced to typewriting and is a true and

accurate record of the proceedings.

        Dated this 22nd day of June, 2017.

        /s/ Lee A. Marzilli
        _____
        LEE A. MARZILLI, CRR
        OFFICIAL COURT REPORTER